UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA,

                Plaintiff,              MEMORANDUM & ORDER
                                                15-CR-466 (ILG)

    v.

EVELYN PERSON,

                Defendant.

------------------------------------------------------------x
GLASSER, Senior United States District Judge:

      Pending before the Court are the defendant's motions pursuant to Fed. R. Crim. P. §§ 29 and 33, respectively, for a judgment of acquittal and/or for a new trial. Defendant Evelyn Person was found guilty after a trial by jury of conspiring with her co-defendant, Justin Smith, to distribute and possess with intent to distribute cocaine base and heroin in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) (Count One) and, individually, of using and carrying a firearm during, and in relation, to a drug offense in violation of 18 U.S.C. § 924(c)(1)(A)(i) and of aiding and abetting that crime in violation of 18 U.S.C. § 2. She was acquitted of Count Two which charged her and Justin Smith with maintaining a stash house in violation of 21 U.S.C. §§ 856(a) and (b).

## RULE 29

      In seeking relief pursuant to Rule 29, the defendant challenges the sufficiency of the evidence to support her convictions of Counts One and Three. That Rule advises the Court that it "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." General principles have accreted overtime to that precisely stated Rule adding layers of meaning to homely words, such as "evidence" and "sufficient" and "sustain."

So, for example, evidence, whether direct or circumstantial, must be assessed most favorably to the Government drawing every inference in its favor. United States v. Bagaric, 706 F.2d 42, 64 (2d Cir. 1983) (overruled on other grounds). A conviction must be affirmed if the jury could have found guilt beyond a reasonable doubt from the inferences fairly and reasonably drawn. United States v. Skowronski, 968 F.2d 242, 247 (2d Cir. 1992) (overruled on other grounds). The determination of credibility is solely in the province of the jury and the Court must not usurp its role. United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999). The clearest and most instructive distillation of the many elaborations of the Rule was written by Judge Prettyman in Curley v. United States, 160 F.2d 229, 232-33 (D.C. Cir. 1947), cert. denied, 331 U.S. 837 (1947), as follows:

> The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter.

The defendant has the burden of persuading the Court that there was no evidence to permit a reasonable mind to fairly conclude that she was guilty beyond a reasonable doubt. United States v. Gordon, 987 F.2d 902, 906 (2d Cir. 1993). Having reviewed the evidence, direct and circumstantial, I conclude that she failed to carry the burden that was hers and that the matter was necessarily left to the jury to decide. Her Rule 29 motion is DENIED.

## **RULE 33**

The relief sought by the defendant is the issuance of an Order by the Court which would vacate the judgment of guilt and grant her a new trial which, as Rule 33 provides, "the interest of

justice so requires." The facts which guide her claim to that relief relate primarily to Count One of the indictment, the verdict sheet on which the jury recorded their vote on the general verdict, and on two special interrogatories. They are as follows:

## COUNT ONE
(Conspiracy to Distribute and Possess with Intent to Distribute Narcotics)

> On or about and between September 29, 2013 and April 2, 2015, both dates being approximate and inclusive, within the Eastern District of New York, the defendant, EVELYN PERSON, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute one or more controlled substances, which offense involved (a) a substance containing cocaine base, a Schedule II controlled substance, and (b) a substance containing heroin, a Schedule I controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).
>
> (Title 21, United States Code, Sections 846 and 841(b)(1)(C); Title 18, United States Code, Sections 3551 et seq.)

Dkt. No. 87, Third Superseding Indictment, p. 1. The verdict sheet reads as follows:

## AS TO COUNT ONE
Conspiracy to Distribute and Possess with
Intent to Distribute Narcotics

> How do you find the defendant?
>
>     Guilty __X__      Not Guilty _____
>
> If you find the defendant guilty as to Count One, answer the following questions:
>
> > Did the government prove that the defendant was responsible for a substance containing cocaine base?
> >
> > Yes _____      No __X__
> >
> > Did the government prove that the defendant was responsible for a substance containing heroin?
> >
> > Yes _____      No __X__

Dkt. No. 141-2, at p. 1.

The legal knot tied by the general verdict and the inconsistent special interrogatories is thus presented to the Court to untie. The sequence of events presaging the inconsistency is significant to informing the untying of it.

Prior to the commencement of the trial, requests to charge the jury were submitted by the parties as prescribed by Fed R. Crim. P. § 30(a). The requests submitted by the Government included the special interrogatories. At the conference pursuant to Rule 30(b), which requires the Court to inform the parties how it intends to rule on their requests, the following colloquy occurred:

> THE COURT: Why was it necessary for them to also find that the defendant was responsible for a substance containing cocaine base? We could add 'As to Count One, conspiracy to distribute and possess with intent to distribute cocaine or heroin or cocaine base or heroin, and how do you find the defendant with respect to that, guilty or not guilty?' Why is it necessary to specify, in addition to that, whether they found a responsibility for a substance containing cocaine base or cocaine or heroin? Why is that necessary?
>
> GOVERNMENT: I think we just do it to insure unanimity in terms of which substance they determined.
>
> DEFENSE COUNSEL: We have to have that. It seems to me it should be 'should the government prove that the defendant conspired to distribute or possess with intent to distribute cocaine base.' That's what it should say. The other one should say 'Did the defendant conspire or possess with intent to distribute heroin?' They have to be unanimous as to the drug.

Dkt. Nos. 146-50, Official Transcript ("Tr."), at p. 697.

After the parties rested, the Court instructed the jury. It discussed in detail the elements of the crime of conspiracy charged in Count One that included, in part, the following:

> A conspiracy is simply defined as an agreement between two or more persons to commit a crime. That's what a conspiracy is. It's an agreement between two or more persons to commit a crime. In this case, it's alleged to be an agreement between Evelyn Person and others to knowingly and intentionally distribute and possess with intent to distribute cocaine base and heroin. A conspiracy is sometimes referred to as a partnership in crime in which each partner, each member of the conspiracy, becomes the agent of every other member of the conspiracy.

4

> To prove the commission of this crime, the Government must prove the following two elements beyond a reasonable doubt: First, the government must prove that a conspiracy existed. And, second, the government must prove that the defendant was knowingly and intentionally a member of that conspiracy. She was a party to the agreement. . .
>
> . . . To sum up, if you find that the government has established beyond a reasonable doubt that a conspiracy existed, that there was a meeting of the minds, a common understanding of two or more persons, one of whom was the defendant in this case, and that the defendant knowingly and intentionally became a party to it, became a member of the conspiracy, you should find her guilty of Count One. If you find that the government has not satisfied its burden of proof, has not established those two elements beyond a reasonable doubt, you must acquit her of that crime.

Tr. at pp. 813, 819.

It is relevant and important to note as well that as to Count Three, which charged the defendant with using or carrying a firearm in furtherance of a drug crime, the Court instructed the jury that "you may consider this Count . . . only if you find beyond a reasonable doubt that she is guilty as charged in Count One . . ." Tr. at p. 827. And finally, in its closing instructions the Court charged as regards Count Three:

> In sum, if you're satisfied that the government proved beyond a reasonable doubt that the defendant is guilty of Count[] One . . . and used or carried a gun during and in relation to the crime charged in Count One . . . then you should convict the defendant of this Count. If, on the other hand, you're not satisfied that the government proved that the defendant committed the crimes herself, you must acquit her of that count.

Tr. at p. 833. No reference was made nor was any instruction given in the charge regarding the special interrogatories. The jury found the defendant guilty of Count Three.

As the colloquy at the charging conference noted above makes evident, there was no meaningful reason why the special interrogatories were included in the verdict sheet. The requested response for a general verdict, i.e., "As to Count One, how do you find the defendant, guilty or not guilty," without more, would have sufficed. Having questioned their propriety, notwithstanding the defendant's insistence that they remain, those interrogatories were best

5

removed. The explanation offered by the Government when asked for one and the insistence by the defendant that they remain, add nothing to the validity of the verdict except confusion. Upon the announcement of the inconsistent verdict, no request was made of the Court by either the Government or the defendant to address the inconsistency or to direct the jury to resume their deliberations with a view toward clarifying the inconsistency, nor did the Court pursue it sua sponte. See e.g. Drew v. United States, 192 F. 854, 856-57 (2d Cir. 1912)[1]; see also United States v. Shippley, 690 F.3d 1192, 1193 (10th Cir. 2012) (Gorsuch, J.).

In support of her motion, the defendant contends that the irreconcilable inconsistencies between the general verdict of guilty and response to the special interrogatories requires the Court to enter a judgment of acquittal or to grant a new trial. The Government's argument is that the special interrogatory responses did not touch the elements of the crime charged, but "rather were additional and unnecessary findings of fact beyond those elements. Accordingly, they had no bearing on the question of the defendant's guilt, and they should not have been included on the verdict sheet." Dkt. No. 151 at p. 29.

## **Discussion**

Rule 33 is exemplary in its succinctness: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Inherent in its succinctness, however, is the question, when does the interest of justice so require? The answers frequently given are "whether letting a guilty verdict stand would be a manifest injustice," United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001), and whether there is a "real concern that an innocent person may have been convicted." United States v. Canova, 412 F.3d 331, 349

---

[1] It is interesting to note that Felix Frankfurter appeared as counsel for the Government as an Assistant United States Attorney.

(2d Cir. 2005). With that gloss upon the Rule in mind, shall the conviction of the defendant of Count One be vacated and a new trial be granted? The answer which the Court is driven to make upon its view of the law is "No" for the reasons discussed hereafter.

Although it would appear that the resolution of the issue in this case is informed by the law on special interrogatories, a search for the answer quickly revealed that it was to be found in the law pertaining to inconsistent verdicts, for which special interrogatories are frequently the cause. An extended discourse on the distinction between special interrogatories and special verdicts may be informative, if not enlightening. The Judiciary, federal and state, have spilled considerable ink on the subject as have the academics and legal historians. See e.g. G.B. Clementson, A Manual Relating to Special Verdicts and Special Findings by Juries (West Pub. Co. 1905); Edmund M. Morgan, A Brief History of Special Verdicts and Special Interrogatories, 32 Yale L.J. 575 (1923); Leon Green, A New Development In Jury Trial, 13 A.B.A.J. 715 (1927); Theodore Plucknett, A Concise History of the Common Law, 417 (5th Ed. 1956). Suffice it to say that special interrogatories are merely intended to be in aid of a general verdict and are never permitted except when a general verdict is returned. Special interrogatories are expressly authorized in civil cases by Fed. R. Civ. P. § 49(b) which has no counterpart in the Federal Rules of Criminal Procedure.[2] Although its absence is not dispositive, see Fed. R. Crim. P. § 57(b), it counsels caution. Black v. United States, 561 U.S. 465, 472 (2010). Interrogatories

---

[2] "Statutes permitting findings to be required in response to interrogatories are held not to apply to criminal cases, for the reason that so to apply them would be to impair the right of trial by jury secured by the Constitution. It is one of the most essential features of the right of trial by jury that no jury should be compelled to find any but a general verdict in criminal cases, and the removal of this safeguard would violate its design and destroy its spirit." Clementson, supra, at 49 (internal citations omitted); see also 31 F.R.D. 617, 618-619 (1963) (in which Justices Black and Douglas disapprove of special interrogatories, even in civil cases); Skidmore v. Baltimore & O.R. Co., 167 F.2d 54, 70 (2d Cir. 1948) (Learned Hand, concurring).

7

in criminal cases are generally disfavored in this Circuit for reasons among which this case is paradigmatic, as an extensive review of the cases by Judge Newman makes plain in United States v. Ruggiero, 726 F.2d 913, 927 (2d Cir. 1984) (concurring in part and dissenting in part). See also United States v. Spock, 416 F.2d 165, 181 n. 40 (1st Cir. 1969). But compare United States v. Ogull, 149 F. Supp. 272 (S.D.N.Y. 1957) (one of the rare cases where interrogatories contributed to the implementation of the general verdict.)[3]

Turning to the law of inconsistent verdicts, a review of which this case invites, it must be kept in mind at the outset that here the inconsistency is within the confines of one count and not between two counts where, for example, the defendant is found guilty of one count and, inconsistently, not guilty of another. The Supreme Court was presented with the problem to which that inconsistency gave rise in Dunn v. United States, 284 U.S. 390 (1932). The defendant there was indicted on three counts of (1) keeping liquor for sale and thus maintaining a common nuisance; (2) unlawful possession of intoxicating liquor, and (3) unlawful sale of such liquor. Id. at 391. He was found guilty of the first Count and acquitted of the other two. Id. at 391-92. The defendant contended that his conviction should be vacated for inconsistency. Rejecting that contention and affirming the conviction, Justice Holmes writing for the Court declared that:

> Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. If separate indictments had been presented against the defendant for possession and for maintenance of a nuisance, and had been separately tried, the same evidence being offered in support of each, an acquittal on one could not be

---

[3] In Spock, the Court wrote, "There are only two classes of cases in which such findings [special interrogatories] have been used. First, in certain cases, the determination of a particular fact will be crucial to sentencing the defendants, as, for example, which of the several objects of conspiracy, some felonies, some misdemeanors, the defendant agreed to, or the duration of a defendant's participation in a conspiracy. Second, in treason cases, the finding of an overt act is specifically required by the federal constitution." 416 F.2d at 182 n. 41 (internal citations omitted); see also Ruggiero, 726 F.2d at 925-27 (observations of Judges Pratt and Newman).

> pleaded as res judicata of the other. That the verdict may have been the result of compromise or of a mistake on the part of the jury is possible. But verdicts cannot be upset by speculation or inquiry into such matters.

Id. at 393-394 (internal citations omitted).

Decades later, United States v. Powell, 469 U.S. 57 (1984), was decided. The defendant there was convicted of three counts of using a telephone in facilitating a conspiracy to possess with intent to distribute and possession with intent to distribute cocaine. Id. at 60. She was acquitted of the conspiracy count and of the substantive offense of possessing cocaine with intent to distribute it. Id. On appeal, the defendant argued that the verdicts were inconsistent and that the telephone facilitation convictions should be reversed. In rejecting her argument the Court, quoting Dunn, 284 U.S. at 393, wrote, "[t]he most that can be said . . . is that the verdict shows that either in the acquittal or conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." Powell, 469 U.S. at 63. In the course of a persuasively reasoned opinion, the Court made observations which, with slight language modification, are peculiarly applicable here. For example, it wrote that it rejected as

> unworkable[] a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake.

Id. at 66. Finally, the Court noted that the defendant is protected against juror error or irrationality by trial and appellate courts independent review of the sufficiency of the evidence. "This review should not be confused with the problems caused by inconsistent verdicts," but by an assessment by the Courts of whether the evidence at trial supports a "rational determination of guilt beyond a reasonable doubt." Id. at 67.

9

I am aware that the inconsistency in this case is inherent in one count, unlike <u>Dunn</u> and <u>Powell</u>, where the inconsistency is between two counts. I submit that, on the unique facts of this case, that distinction is of no moment. It is worthy of note that, had the defendant been indicted and acquitted of a separate count of possessing with intent to distribute cocaine base and heroin and convicted of the conspiracy in Count One, as she was, her conviction would stand as required by <u>Dunn</u> and <u>Powell</u>. Cognizant that it is speculative, that the jury's thought processes are unknown, I submit that in finding that the defendant was not "responsible for a substance containing cocaine base or heroin" they were deciding that she was, in effect, "not responsible" for the substantive offense of possessing with intent to distribute the controlled substance.[4] That irresistibly compelling assessment of this special interrogatory would also negate an inconsistency in the verdict. It is hornbook law that the commission of the substantive offense and the conspiracy to commit it are two separate and distinct crimes. The crime of conspiracy requires proof not essential to the conviction of the substance offense. "[T]he essence of a conspiracy is an agreement to commit an unlawful act. That agreement is a 'distinct evil,' which may exist and be punished whether or not the substantive crime ensues." <u>United States v. Jiminez Recio</u>, 537 U.S. 270, 274 (2003) (internal citations and quotations omitted).

---

[4] That assessment is supported by the defendant's contention that "it was only possible for the jury to find Ms. Person guilty of the narcotics conspiracy count if it found that she knew that Justin Smith was distributing and possessing with intent to distribute cocaine base [crack] and/or heroin, and the jury's unanimous finding that the Government had failed to prove her responsible for either cocaine base [crack] or heroin required a verdict of not guilty of the conspiracy count." Dkt. No. 152 at p. 15. Whether Justin Smith was distributing and possessing with intent to distribute the controlled substances, or she knew he was, would be significant if the defendant were charged with the substantive offenses of jointly and together with Justin Smith possessing and distributing with intent to distribute the controlled substances. But she was not charged with that offense. She was charged with conspiracy, with agreeing with Justin Smith to engage in that "distinct evil."

10

The irrelevance of the distinction between the inconsistency inhering in one count rather than two is made manifest by the following excerpt in Powell:

> Inconsistent verdicts . . . present a situation where . . . it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course . . . For us, the possibility that the inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest.

469 U.S. at 65. That precise conundrum inheres here as well.

Serendipitously applicable, if not dispositive, is the review of fundamental principles of the law of conspiracy in Ocasio v. United States, 136 S. Ct. 1423 (2016). Elaborating on the traditional definition of a conspiracy as being simply an agreement between two or more persons to commit a crime, Justice Alito wrote that,

> The Government does not have to prove that the defendant intended to commit the underlying offense himself/herself. Instead, if conspirators have a plan which calls for some conspirators to perpetuate the crime and others to provide support, the supporters are as guilty as the perpetrators. [W]hen people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy. . . A few simple examples illustrate this important point. . . [A] specific intent to distribute drugs oneself is not required to secure a conviction for participating in a drug-trafficking conspiracy.

Id. at 1429-30 (internal citations are omitted).

In 1895, the Supreme Court decided Statler v. United States, which guides the Court to a confident resolution of this case. 157 U.S. 277 (1895). Statler was indicted on three counts as follows: (1) possessing counterfeit coins with intent to defraud; (2) possessing such coins with attempt to defraud; and (3) actually passing such coins with intent to defraud. Id. at 277. The defendant admitted possessing such coins and knowing they were counterfeit, but pleaded not guilty of passing or intending to pass them with intent to defraud. Id. The Government abandoned the second and third counts at trial. Having admitted possession of the counterfeit

coin, the jury found the defendant guilty of the first count, that the intent to defraud existed. The verdict was sealed and opened the next day and read as follows: "the jury finds the defendant guilty in the first count for having in possession counterfeit minor coin; not guilty as to second and third counts." Id. at 278. The defendant moved to vacate the judgment arguing that the jury finding him not guilty of the second and third counts clearly indicated they did not intend to find him guilty of intent to defraud. His motion was denied, sentence imposed and, on appeal, the Supreme Court affirmed. After finding that the verdict was general and not special[5] the Court wrote,

> [I]t is settled beyond question that a verdict of guilty, without specifying any offense, is general, and is sufficient, and is to be understood as referring to the offense charged in the indictment. The verdict being general . . . any words attached to the finding 'guilty on the first count' are clearly superfluous, and are to be so treated.

Id. at 278-79 (internal citations omitted). Citing an ancient treatise, In Trials per Pais (8th Ed. 1766, p. 287), the rule is thus stated: "[i]f the jury give a verdict of the whole issue and of more . . . that which is more is surplusage and shall not stay judgment, for 'utile per inutile non vitiatur.'" Id. at 279; Ballentine's Law Dictionary (3rd ed. 1969) ("That which is useful is not vitiated by that which is superfluous."). The Court then went on to observe that, "[t]o allow the superfluous words which were attached to the finding of guilty to have the effect here claimed for them would compel us to read the verdict as saying, . . . 'We find [the defendant] guilty although he is not guilty." Statler, 157 U.S. at 279-280. That the inconsistency created by the clumsily formulated verdict sheet is in one count rather than two, is of no moment is exquisitely

---

[5] The Court explained a special verdict as follows: "[a] special verdict is defined by Blackstone to be 'one where the jury state the naked facts as they find them to be proved, and pray the advice of the court thereon, concluding conditionally; that is, if upon the whole matter the court should be of the opinion that the plaintiff had cause of action, then they find for the plaintiff; if otherwise, for the defendant.'" Statler, 157 U.S. at 278, citing 3 Blackstone Commentaries 377, 378.

12

revealed by Statler.  This defendant is asking us to read the verdict reached on Count One as similarly finding: we find the defendant guilty of conspiracy although she is not guilty.

The enduring applicability of that ancient maxim to the jury's verdict that defendant was guilty of Count One is the verdict that was intended, is compelled by the jury's verdict on Count Three that she knowingly and intentionally possessed, used and carried a firearm in furtherance of the conspiracy charged in Count One.  In that regard, the jury was explicitly instructed that they may consider Count Three only if they find beyond a reasonable doubt that she is guilty as charged in Count One with conspiracy to distribute and possess with intent to distribute cocaine and heroin.  Having found her guilty of Count Three, they necessarily found her guilty of Count One and the words added there are superfluous.

It should also be noted, in the light of Dunn and Powell, that should she be granted the relief she seeks on Count One, the verdict that found her guilty of Count Three remains unaffected.

Statler is convincingly dispositive here.  The finding of "guilty" being a general verdict, the "words attached to [it] are clearly superfluous, and are to be so treated."  157 U.S. at 279. The application of that ancient maxim to inconsistent verdicts although surely not foreseen when invoked, burnishes the wisdom of its author as it does the wisdom of Judge Learned Hand, Justices Douglas and Black, and the others who abjured special verdicts in criminal cases.  It makes moot the conundrums of whose ox is to be gored; the speculative assessment of the meaning of ambiguous words and the impermissible delving into the minds of the jurors.

The aversion to the use of special interrogatories in criminal cases has been noted above. Cases such as this one buttress that aversion by the challenging issues to which they give rise and

13

the equally challenging resolution of them, crafted by the courts. Three relatively recent cases discussed by the parties as impacting on their respective positions will be noted.

I begin with United States v. Shippley, 690 F.3d 1192 (10th Cir. 2012) (Gorsuch, J.). The defendant was charged with conspiracy to distribute and possess with intent to distribute one or more of the following controlled substances: 50 grams and more of methamphetamine; 500 grams and more of cocaine; and a detectable amount of MDMA or ecstasy. In addition to answering "guilty" to the charged conspiracy on the verdict form, the jury was directed to answer special interrogatories to which they responded that the defendant did not conspire to distribute any of the drugs listed in the indictment. Id. at 1193. Silently echoing the observation in Statler, the court, writing through Judge Gorsuch as he then was, said, "[i]n effect, the jury both convicted *and* acquitted Mr. Shippley of the charged conspiracy," and asked, "[w]hat to do?" Shippley, 690 F.3d at 1193 (emphasis in original). The district court chose to direct the jury to deliberate further. The jury did and returned an unambiguous verdict of guilty. Id. at 1194. The court was thus spared the necessity of answering its question and provides no assistance to this Court in answering the same question posed here, what to do?

In United States v. Bran, 776 F.3d 276 (4th Cir. 2015), Bran was indicted and charged with five counts. Count One charged conspiracy to murder in aid of racketeering; Count Two charged murder in aid of racketeering; Count Three charged use of a firearm during a crime of violence causing death to another and with aiding and abetting; Count Four charged conspiracy to commit murder in aid of racketeering (a different victim); Count Five charged maiming in aid of racketeering. Id. at 277. Count Three was punishable by death or life imprisonment to run consecutively to the sentences in the other counts, all of which ran concurrently. The court instructed the jury that, on Count Three, the Government had to prove three elements beyond a

14

reasonable doubt: (1) that Bran aided and abetted the murder of the victim; (2) that during and in relation to the murder, he knowingly aided or abetted the use, carriage, or discharge of a firearm; and (3) that the firearm caused the death of the victim. Id. at 278. The jury was instructed to return a general verdict and, if that verdict was "guilty," to then answer a three-part special interrogatory as follows: Did Bran "aid, abet[] . . . another to (1) use a firearm during and in relation to a crime of violence; (2) carry a firearm during and in relation to a crime of violence; and/or (3) cause a firearm to be discharged during and in relation to a crime of violence?" Id. at 278-79 (emphasis added). The jury returned a general verdict of "guilty," answered "yes" to (3) and answered "no" to (1) and (2), or left them unanswered. Id. at 279. The court invited counsel to discuss the jury's answers to the special interrogatories, but all agreed that to inquire further of the jury was inappropriate and the matter was left as is. Id. However, Bran later moved for a judgment of acquittal, arguing that the jury failed to find "use" of a firearm as charged. The court denied the motion. In affirming the conviction, the court held that the jury was properly instructed as to the elements to be proved to sustain a conviction on that count and the jury's general verdict alone was enough to support the conviction. Id. at 280. The special interrogatory's response supported that result, by finding that discharging a gun necessarily includes using it. It may plausibly be contended that in deciding that "the jury's general guilty verdict alone is sufficient to uphold Bran's [] conviction," id., the Court is wittingly or unwittingly invoking the ancient maxim recited in Statler, and the verdict being general, any words attached to the finding of guilty are superfluous.

In United States v. Lucarelli, 476 F. Supp. 2d 163 (D. Conn. 2007), adhered to on reconsideration, 490 F. Supp. 2d 295 (D. Conn. 2007), the defendant was found guilty of one count (Count One) of conspiracy to commit mail, wire and securities fraud in violation of 18

15

U.S.C. § 371, and one count (Count 12) of the substantive offense of securities fraud in violation of 18 U.S.C. § 1348. 476 F.Supp.2d at 165. He was acquitted of eight intervening counts of mail and securities fraud. Id. He was not charged with wire fraud. The verdict form given to the jury listed counts 1-4, the mail fraud counts, and 7-12, the securities fraud counts, with "Guilty _____ Not Guilty _____" next to each. That was the general verdict. It then provided a Special Interrogatory, which read "[i]f you find the defendant guilty of any of Counts 2-4 or 7-12, did you find the defendant <u>participated</u> in the fraudulent scheme with the specific intent to defraud . . ." Id. (emphasis added). The jury checked "Guilty" of the conspiracy count, Count One, and "Guilty" of the substantive securities fraud, Count 12. They checked "Not Guilty" on each of the intervening substantive mail and securities fraud counts. Id. The defendant was not charged with substantive wire fraud. It is very significant to note that the special interrogatory did not include Count One in the listed substantive counts.

In a post-verdict colloquy with counsel, the court asked whether it should leave the verdict inconsistency for post-trial briefing or ask for clarification from the jury. The defense counsel opted to "take the verdict as it is." Id. at 166. Thereafter, a motion was made for an acquittal or a new trial. The Court granted the motion and entered a Judgment of Acquittal. The Court reasoned that the conspiracy charge it gave to the jury did not explicitly instruct them that they must prove that the Government had a specific intent to defraud. It wrote, "after review of the parties' briefing and oral argument on the necessity of a 'specific intent to defraud' finding for a conspiracy conviction, the Court is convinced that such a finding is an essential element of a charge of conspiracy to commit securities and/or mail fraud and, given the special interrogatory answers, it is clear that the jury did not find such an intent proved here." Id. at 170. The Court

16

adhered to its decision in its opinion in response to the Government's motion to reconsider, adding a double jeopardy implication in furtherance of it. 490 F. Supp. 2d 295 (2007). [6]

The case most vigorously relied on in support of the relief she seeks is United States v. Randolph, 794 F.3d 602 (6th Cir. 2015), in which the defendant was charged in five counts: conspiracy to violate the federal drug laws, in violation of 21 U.S.C. § 846 (Count One); conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count Two); knowingly possessing firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 1924(c) (Count Three); assisting others to prevent their apprehension, in violation of 18 U.S.C. § 3 (Count Four); and perjury, in violation of 18 U.S.C. 1621(1) (Count Twelve). 794 F.3d at 606. The jury convicted the defendant of all counts except Count Three. As to Count One, the conspiracy count, the verdict form presented to the jury asked it to unanimously find whether the defendant was guilty or not guilty. Id. The jury checked "Guilty." That was the general verdict. It then instructed that if they answered "Guilty," they were to indicate in three separate sub-questions the amount of drugs involved in the conspiracy. For example:

> 1(a) With respect to Count One, the amount of cocaine involved in the conspiracy was:
> \_\_\_\_\_ 5 kilograms or more
> \_\_\_\_\_ at least 500 grams, but less than 5 kilograms
> \_\_\_\_\_ less than 500 grams
> \_\_X\_\_ None

---

[6] Inadvertently overlooked, perhaps, is that the special interrogatory did not include Count One, the conspiracy count, in its inquiry and, therefore, that count was not embraced by the jury's response. See also, Leonard B. Sand, Federal Jury Instructions 19-3 ("Allegations not necessary to prove the crime are mere surplusage and need not be proved or embodied in instructions to the jury. Nor is it necessary for the trial court to reiterate a list of the elements of substantive offenses which are charged as objects of the conspiracy, when setting forth the elements of Section 371."); see also United States v. McCoy, 539 F.2d 1050, 1063-64 (5th Cir. 1976).

17

Id. at 607. Numbers 1(b) and 1(c) were the same format with 1(b) referencing crack cocaine and 1(c) referencing marijuana. The jury checked "None" in response to each. Id.

Randolph filed a motion for a new trial and for a judgment of acquittal on Counts One and Ten. Recognizing the inconsistent findings relating to the drug trafficking conspiracy, he argued that his conviction was untenable given a finding of guilty of a drug trafficking conspiracy involving none of the charged drugs. The district court denied his motion. The Court of Appeals for the Sixth Circuit reversed the judgment of conviction of Count One, the drug trafficking conspiracy, and remanded the case to the district court to enter a judgment of acquittal. The Court acknowledged Dunn and Powell, but distinguished them as involving inconsistencies between two counts rather than in one and holding that, "[w]here a jury's special verdict finding negates an essential element of the offense" with which he is charged, he "must be acquitted and cannot be retried on that offense." Id. at 612, citing Lucarelli, 476 F.Supp.2d at 167. The inconsistency was not in the finding of a special verdict, but in response to a special interrogatory. Special verdict and special interrogatory are not synonymous. In directing an acquittal, the court disagreed with the dicta in Shippley which suggested the appropriate remedy in this situation to be a remand for a new trial. 794 F.3d at 612. To allow the Government to subject the defendant to another trial in the hope of getting an unambiguous result when "one jury has already determined that the amount of drugs involved in the purported drug conspiracy were none" would, it stated, be impermissible double jeopardy. Id.

It is interesting to note that the district court in denying the defendant's motion, stated that the findings of drug quantity possession was for sentencing purposes and the defendant's conviction would be valid even if he was found to have no drugs and that "[p]erhaps the wording of the question on the verdict forms was inartful . . ." Id. at 608.

18

The district court, in my view, was correct that the finding of no quantity of drugs would not have precluded a conviction. For one, possession with intent to distribute an unspecified amount of drugs is punishable as a violation of 21 U.S.C. § 841 (b)(1)(C). The indictment of the defendant in this case before the Court explicitly charged §§ 21 U.S.C. 846 and 841(b)(1)(C). More importantly, however, Randolph and this defendant were charged with conspiracy, a crime in which possession is not an element; it is the <u>agreement</u> which is the evil and, in that respect, the district court's wording, "the findings of drug possession quantity were for . . . sentencing," was inartful. The special interrogatory was clearly and properly intended to implement the general verdict as regards the sentence to be imposed. Section 841(b) prescribes the penalties to be imposed depending upon the quantity of the controlled substance involved.

More significant, however, was the Court's instruction to the jury regarding the verdict form of which I take judicial notice. Fed. R. Evid. §§ 201(b)(2), (c)(1). The verdict form is styled as indicated above and in the Court's instruction following the sub-sections of the interrogatories, it provided:

> . . . (6) If you unanimously find that a particular defendant <u>did not possess</u> any of a particular controlled substance, mark "None" on the appropriate verdict form.

<u>United States v. Randolph</u>, M.D. Tenn., 3:11-CR-0082, Dkt. No. 1180, pp. 33-34 (emphasis added). That is the only place in that two page instruction where the word "None" appears. The jury's response of "None" was not inconsistent with the general verdict of "Guilty" at all. The defendant was not charged with possession of the drugs with intent to distribute the controlled substances pursuant to 21 U.S.C. § 841. He was charged with conspiracy pursuant to section 846 for which possession is not an element and was superfluous. The general verdict of guilty was not negated.

The brief review of the cases frequently cited in which special interrogatories sow inconsistency lend persuasive support for the view that they are best avoided in criminal cases, as they should have been in this one.

For all of the foregoing reasons, the defendant's Rule 33 motion is also DENIED.

SO ORDERED.

Dated: Brooklyn, New York
June 6, 2017

/s/
I. Leo Glasser